UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

---------------------------------------------------------------X
TRACEY GRAHAM,

                Plaintiff,              Civil Action No.: 20-cv-61080 (AHS)

    v.

                                          **AMENDED COMPLAINT**

BARRIER TECHNOLOGIES, LLC and MARC
GLICKMAN, DMD, in his individual and
professional capacities,                    **Jury Trial Demanded**

                Defendants.

---------------------------------------------------------------X

       Plaintiff, Tracey Graham, upon personal knowledge or, where necessary, information and belief, hereby alleges and avers as follows:

## PRELIMINARY STATEMENT

    1.    This is a case of a company and its owner holding themselves out to the public as conscientious manufacturers of personal protection equipment ("PPE") for medical professionals battling COVID-19, while hypocritically and unlawfully denying their own employees, who may have contracted COVID-19, legal protection through paid sick leave so they can get better and stay employed.

    2.    Congress enacted the Families First Coronavirus Response Act ("FFCRA") to protect employees affected by the COVID-19 pandemic.

    3.    Among the several protections enacted, the Emergency Paid Sick Leave Act ("EPSLA") of the FFCRA requires employers to provide up to two weeks of paid sick leave and job protection for employees who, *inter alia*, are (a) subject to a governmental quarantine or isolation order related to COVID-19 or (b) advised by a health care provider to quarantine or self-isolate due to concerns related to COVID-19.

4. Barrier Technologies, LLC ("Barrier" or the "Company"), a company that manufacturers radiation PPE that it claims on its website is "COVID-19 Compliant," and the Company's owner and Managing Director, Marc Glickman, DMD ("Dr. Glickman") (together, "Defendants"), blatantly disregarded their obligations under the FFCRA and EPSLA by unlawfully terminating Ms. Graham after she developed viral symptoms and self-isolated as she was advised to do by her health care provider because of COVID-19 concerns.

5. Specifically, Ms. Graham, an embroiderer who Dr. Glickman aggressively pursued to work at the Company, left work early on April 10, 2020 after she started experiencing viral symptoms.

6. Ms. Graham immediately sought medical treatment and was advised by a health care provider to self-isolate until her symptoms subsided for at least seven days.

7. On April 16, 2020, six days later, Defendants terminated Ms. Graham's employment before she could return to work, citing economic conditions related to the COVID-19 pandemic.

8. Adding insult to injury, Defendants not only unlawfully terminated Ms. Graham because she took protected sick leave, they also refused to pay her for any of that sick leave notwithstanding a clear legal obligation to do so.

9. Ms. Graham brings this action under the FFCRA/EPSLA to recover: (a) unpaid sick leave wages; (b) wages lost as a result of her unlawful termination; (c) compensatory damages for the emotional distress suffered as a result of losing her employment; and (d) liquidated and/or punitive damages to the fullest extent of the law.

## ADMINISTRATIVE PREREQUISITES

10. Plaintiff filed a charge of discrimination and retaliation against Defendants with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA. The EEOC subsequently issued Plaintiff a Notice of Right to Sue ("Right to Sue") on July 15, 2020. Ms. Ugalde has asserted her Title VII claims within 90 days of receipt of the EEOC's Notice of Right to Sue.

11. Ms. Ugalde cross filed her EEOC charge with the Florida Commission on Human Rights alleging claims under the Florida Civil Rights Acts ("FCRA"). Pursuant to FCRA § 760.11(8), Plaintiff is deemed to bring her FRCA claims in this action after 180 days have passed without there being a determination on whether reasonable cause exists.

12. Plaintiff has complied with any and all other prerequisites prior to filing this action.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this action involves federal questions regarding the deprivation of Plaintiff's rights under the FFCRA and EPSLA, which are enforced through sections 15(a)(3), 16 and 17 of the FLSA, 29 U.S.C. §§ 216-217. See 29 C.F.R. § 826.150.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful practices complained of herein, occurred in this district.

## PARTIES

12. Plaintiff, Tracey Graham, is a former employee at Barrier. Ms. Graham is a resident of the State of Florida and, at all relevant times herein, met the definition of an

"employee" and/or "covered employee" under all relevant statutes, and performed work and services for the Company.

13. Defendant, Barrier Technologies, LLC, is a Florida limited liability corporation registered at 7060 W. State Road 84, Suite 8, Davie, FL 33317. At all times relevant herein, Barrier was an "employer" and/or "covered employer" under all relevant statutes.

14. Defendant, Marc Glickman, DMD, is the President and CEO of Barrier who hired Plaintiff, set her rate of pay and supervised Plaintiff during her employment at Barrier. At all relevant times, Dr. Glickman met the definitions of "employer" and/or "covered employer" under all applicable statutes.

## FACTUAL ALLEGATIONS

I. **BACKGROUND**

15. Ms. Graham grew up using embroidery machines as a hobby, and for the last six years has worked as a full-time embroider.

16. Towards the end of 2019, Ms. Graham decided she wanted to move from Washington State to Florida to work until she retired.

17. In November 2019, Ms. Graham applied for embroidery positions at Barrier and Embroidery World.

18. Ms. Graham did not receive a response to her application to Barrier, but she did interview and accept a position at Embroidery World.

19. In December 2019, Ms. Graham moved to Florida and started working at Embroidery World.

## II. BARRIER AGGRESSIVELY RECRUITS MS. GRAHAM

20. On February 11, 2020, Dr. Glickman contacted Ms. Graham about the employment application she had previously submitted to Barrier.

21. During the call, Dr. Glickman asked Ms. Graham about her current position, and told her that he would be happy to offer her more money than she was earning at Embroidery World and that he would also provide her medical, dental, vision and retirement benefits after being employed by Barrier for 60 days.

22. Dr. Glickman also invited Ms. Graham to come meet him and tour the office.

23. After the call, Dr. Glickman emailed Ms. Graham telling her that she would be a "great addition" to the team and asked when she would be available to visit Barrier.

24. A few days later, Dr. Glickman called Ms. Graham again to ask her if she had thought about his offer and told her that he really wanted to meet her in person and show her around the office.

25. Dr. Glickman told Ms. Graham that it would not be a traditional interview because he knew that he wanted her to work at the Company.

26. On February 16, 2020, Ms. Graham visited Barrier during her lunch break. Dr. Glickman showed Ms. Graham around the office and introduced her to some of the employees. During the tour, Ms. Graham noticed a problem with one of the embroidery machines and quickly fixed the problem.

27. Afterward, Dr. Glickman brought Ms. Graham to a conference room and gave her W-4 and I-9 forms and a check for $30.00.

28. Dr. Glickman told Ms. Graham that the check was for fixing the machine even though it only took her only a few minutes to do so.

29. Dr. Glickman also continued to persuade Ms. Graham to join the Company by telling her that she would have design rights to change embroidery patterns and that her opinions would be respected at Barrier.

30. Persuaded by Dr. Glickman's entreaties, Ms. Graham accepted the position and told him she would give notice at her current job.

31. On February 24, 2020, Ms. Graham started working at Barrier and soon proved to be nothing but a model employee.

32. Ms. Graham made sure to stay busy throughout the workday, including finding additional work to help with when she completed her work on the embroidery machines.

33. Ms. Graham also was very efficient with her embroidery work, and in one day she was able to complete 47 items on the Company's two embroidery machines.

34. Even with the COVID-19 pandemic, Ms. Graham remained very busy and continued to work since she had been classified as an essential employee.

35. Unlike many other companies that have had to lay-off employees during the pandemic, Barrier hired three new employees and Ms. Graham's workload increased during the time she was employed there.

### III.   MS. GRAHAM IS ADVISED TO SELF-ISOLATE BECAUSE OF VIRAL SYMPTOMS

36. On April 10, 2020, Ms. Graham left work early because she felt nauseated and had a sore throat and a stuffy nose.

37. Accordingly, Ms. Graham told Wendy Giltz, Director of Customer Service, that she was not feeling well and needed to leave work early.

38. On her way out, Ms. Graham stopped by Dr. Glickman's office to let him know that she was going home sick.

39. Later that day, Ms. Graham had a video appointment with Juan Gomez, M.D., who told her that he did not know whether she had COVID-19 without testing, which Ms. Graham could not travel to obtain because she did not have a car.

40. Dr. Gomez diagnosed Ms. Graham with a viral condition and ordered her to self-isolate until at least seven days had passed from the time her symptoms first appeared.

41. Ms. Graham forwarded the self-isolation letter to Barrier's general email address and received an acknowledgement from Barrier's Vice President of Sales, Michael Mazzurco.

42. Upon information and belief, Dr. Glickman believed that Ms. Graham had contracted COVID-19, which potentially impacts certain major life activities on a temporary or permanent basis, and thus perceived her as disabled because of the virus.

43. Moreover, Defendants refused to engage in an interactive process to determine whether Ms. Graham needed a reasonable accommodation.

## IV. MS. GRAHAM IS UNLAWFULLY TERMINATED

44. Less than a week later, on April 16, 2020, Ms. Giltz sent a text message to Ms. Graham informing her that her position was being "eliminated."

45. Ms. Graham also learned that she would be paid through her last day of actual work but would not receive any compensation for the period of time she was out sick.

46. Unfortunately, Ms. Graham is not the only employee who has been terminated based on the Defendants' belief that the employee has Coronavirus.

47. Specifically, shortly before Ms. Graham left because she was not feeling well, she overheard Dr. Glickman tell Ms. Glitz that "this whole COVID thing would have blown up in our face if [the Company] continued with Christina" – suggesting that Defendants had terminated Christina (last name unknown) for reasons similar to those regarding Ms. Graham.

**FIRST CAUSE OF ACTION**
**(Unpaid Sick Leave in violation of FFCRA/EPSLA)**
*Against All Defendants*

48. Plaintiff repeats and re-alleges each and every allegation in the preceding factual allegations section, as though fully set forth herein.

49. Plaintiff was entitled to up to two weeks (or 80 hours) of paid sick leave pursuant to the EPSLA because she was advised by a health care provider to self-isolate due to concerns related to COVID-19.

50. Defendants failed to pay Plaintiff for any sick leave while she was advised by a health care provider to self-isolate and did not report to work.

51. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered lost wages.

52. Upon information and belief, the violations of law complained of herein were willful; accordingly, Plaintiff also seeks liquidated and/or punitive damages, to the fullest extent available under the law, as well as reasonable attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Retaliation or Interference in Violation of FFCRA/EPSLA)**
*Against All Defendants*

53. Plaintiff repeats and re-alleges each and every allegation in the preceding factual allegations section, as though fully set forth herein.

54. The EPSLA prohibits employers from discharging any employee because the employee took qualifying paid sick leave and requires an employer to restore an employee to the same or equivalent position after taking qualifying sick leave. 29 C.F.R. §§ 826.130(a), 826.150(a).

55.     Defendants terminated Plaintiff while she was advised by a health care provider to self-isolate due to concerns related to COVID-19.

56.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered lost wages and significant emotional distress because of her termination.

57.     Plaintiff also seeks liquidated and/or punitive damages, to the fullest extent of the law, as well as reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
**(Disability Discrimination in Violation of Title VII and the FCRA)**
*Against All Defendants*

58.     Plaintiff repeats and re-alleges each and every allegation in the preceding paragraphs, as though fully set forth herein.

59.     Plaintiff suffered from a disability, was perceived as suffering from a disability (COVID-19) that affected one or more major life activities.

60.     By the actions described above, among others, Defendants discriminated against Plaintiff in violation of Title VII and the FCRA by denying her equal terms and conditions of employment on account of her disability, including, but not limited to, terminating her employment.

61.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the FCRA, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm, for which she is entitled to an award of monetary damages and other relief.

62.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the FCRA, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

63. Defendants' unlawful and discriminatory actions constitute malicious, willful and wanton violations of the FCRA for which Plaintiff is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States;

B. An injunction and order permanently restraining Defendants and their partners, officers, owners, agents, successors, employees and/or representatives, and any and all persons acting in concert with it, from engaging in any such further unlawful conduct, including the policies and practices complained of herein;

C. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, loss of past and future income, wages, including overtime wages, compensation, seniority, and other benefits of employment;

D. An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

  E. An award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff, including, but not limited to, loss of income, earned bonus pay, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

  F. An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

  G. Prejudgment interest on all amounts due;

  H. An award of Plaintiff's reasonable attorneys' fees and costs; and,

  I. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: July 20, 2020
  New York, New York   Respectfully submitted,

            **WIGDOR LLP**

            By: _/s/ Bryan L. Arbeit_
            Bryan L. Arbeit
            (Bar No. 1010329)
            Parisis G. Filippatos
            (admitted *pro hac vice*)

            85 Fifth Avenue
            New York, NY 10003
            Telephone: (212) 257-6800
            Facsimile: (212) 257-6845
            barbeit@wigdorlaw.com
            pfilippatos@wigdorlaw.com

            *Counsel for Plaintiff*